## FLASH, HARTWELL & CO. *vs.* PAUL, COOK & CO.

[SUIT COMMENCED BY ORIGINAL ATTACHMENT—JUDGMENT BY DEFAULT.]

1. *Invalidity of original attachment issued by clerk of city court of Mobile.*— An original attachment, issued by the clerk of the city court of Mobile, is void ; and a judgment by default, predicated on such attachment, is also void for want of jurisdiction.
2. *What defects avail garnishee.*—A garnishee cannot avail himself of any mere irregularities in the attachment, or in the judgment against the defendant ; yet, where the judgment against the defendant is void for want of jurisdiction, as where it is predicated on a void original attachment, there can be no valid judgment against the garnishee.

APPEAL from the City Court of Mobile.

Tried before the Hon. ALEX. McKINSTRY.

THIS action was commenced by an original attachment, which was issued by the clerk of the city court of Mobile, at the suit of Paul, Cook & Co. v. A. Flash & Co. ; and the present appellants were summoned, by process of garnishment, as the debtors of said A. Flash & Co. A judgment by default was rendered against the defendants in attachment, and at a subsequent term a judgment was rendered against the garnishees on their answer, which judgment they now assign as error.

GEO. N. STEWART, for the appellants, cited the case o Stevenson v. O'Hara, 27 Ala. 362.

WM. G. JONES, with whom was A. R. MANNING, *contra*, made the following points:—I. Admitting that the attachment was issued without authority on the part of the clerk, yet the appellants, having appeared, and answered without objection, cannot avail themselves of this defect.—Walker v. Taylor, 1 Stew. & P. 298 ; Smith v. Chapman, 6 Porter, 365 ; Daniel v. Hopper, 6 Ala. 298 ; Gill v. Downs, 26 Ala. 670.

II. The clerk of the city court had authority to issue the attachment. The late case of Stevenson v. O'Hara, it is respectfully submitted, ought to be fully re-considered, and overruled. That case ought not to be considered of great, much less of binding authority, because,—

1. The point on which it was decided, was not argued ;* and this greatly diminishes its authority.—Ram on Judgment, m. p. 182 ; Tyler v. Lake, 4 Simons, 144; Purcell v. McNamara, 9 East, 161.

2. It is only one case on the point ; and the attention of the court was not called to the authorities, nor to a material statute hereinafter noticed.—Ram on Judgment, 121.

3. It is on a mere question of practice ; and in such cases, the maxim *stare decisis* is not applied as strictly as in cases affecting titles to property, long acquiesced in and acted on.

4. It is contrary to the generally received opinion of the profession in Mobile, where alone the question could arise ; and many of the most learned jurists have considered the common opinion of the profession as of high authority.— Co. Litt. 186 *a*, 205 *a* ; 1 Taunton, 448 ; 1 Maule & Sel. 396 ; 5 Cranch, 22 ; Ram on Judgment, 12.

5. It is in conflict with the uniform practice of the court ever since its organization ; and that practice, though not conclusive, is strong evidence that it is right.—5 Cranch, 22;

---

* The statement contained in the report of that case, that " no briefs were submitted by counsel on this point," is a mistake, into which the reporter was led by the fact that the point was not made on the briefs which came to his hands with the record. He has since been informed by the counsel that the point was distinctly made and argued.—REP.

Harper's R. 102 ; 14 Ala. 423 ; 7 Ala. 710, 713 ; Ram on Judgment, 62–65, and cases there cited.

6. The court should look to the consequences of the decision.—Ram on Judgment, 233. This decision will inevitably lead to many lawsuits, and to much injustice. About two hundred and fifty original attachments have heretofore been issued by the clerk of the city court. The titles to a large amount of property depend upon their validity. How can the sheriffs, clerks, and other officers escape liability in all these cases ?

But it is insisted, also, that the decision itself is erroneous; because, 1st, the several statutes bearing on the subject, which are to be construed *in pari materia*, confer on the clerk of the city court power to issue original attachments. Those statutes are the following : The act of January 27, 1845, gave authority to " the clerks of the circuit *and county* courts to issue original and ancillary attachments." Under this act, the clerk of the then county court of Mobile had authority to issue an original attachment ; it was process of the court, and a part of its system of practice. The act of February 3, 1846, which established the criminal court of Mobile, provides that it " shall have a seal, a clerk, and other officers for the exercise of its jurisdiction, as the circuit courts have," &c. ; and " that the process of said criminal court shall be tested, &c., and in the form, as is or may be provided for the process of the circuit courts." The act of February 11, 1850, contains a provision, " that the same jurisdiction and system of practice which the county courts now possess," &c., " be, and the same is hereby, conferred on the criminal court of Mobile." The act of February 12, 1850, changed the name of the court. The Code (§10) continues in force " all acts creating the city court of Mobile, and in relation thereto." The act of February 7, 1852, which is the only act noticed in the opinion of the court, vests in the city court " all the powers and jurisdiction of the circuit courts, except in actions to try titles to land "; and the second section declares, " that all laws of a general nature, (except as to actions to try titles to land,) that may hereafter be adopted, giving jurisdiction to the circuit courts of this State," &c., " shall be held to apply and extend to the city court of Mobile, though it may not be mentioned

in said law." The act of February 17, 1854, " to regulate the sessions of the circuit and city courts of Mobile," providing that "suits begun in either of said courts by attachment," &c., seems to recognize the power of the city clerk to issue such attachments. Besides these special statutes, the act of 1807 (Clay's Digest, 334, § 123) provides that "all original process," &c., " to bring any person to answer to any action in any court, shall be issued by the clerk of such court." That an attachment is original process to bring the defendant into court, especially if he is a non-resident, see 11 Ala. 218, 942; 9 Ala. 615.

These statutes, construed by the general rules for the interpretation of statutes, clearly give the power to issue original attachments. Our attachment laws are remedial, and should be liberally construed to advance the remedy.—Clay's Digest, 59, § 17; Dwarris on Statutes, 718. Both persons and things, though not within the words of a statute, are often held to be embraced in what is called its equity.—Dwarris, 710, 713, 721, 728. A practice which has grown up under a statute is to be considered in construing it, and the statute should be so construed as to support the practice.—5 Cranch, 22 ; 7 Ala. 710, 713 ; 14 Ala. 425 ; 4 Mass. 477 ; 17 Pick. 518. The meaning of the words of a statute may sometimes be gathered from a subsequent statute *in pari materia.*—3 How. 565. In construing a statute, the court should look to the consequences, and so construe it as to avoid inconvenient consequences.— Dwarris, 757.

At common law, clerks, even of the superior courts at Westminster, had no power to issue original writs. Those courts themselves had no such power. All original writs were issued by the king alone, out of his court of chancery, *officina brevium.*—3 Bla. Com. 48, 273. The clerks could not even issue the subsequent writs to compel appearance, which were issued by the court.—*Ib.* 279–80. In the courts of the United States, and in those States where the common law is unchanged, such writs are still issued by the court, and tested by the chief-justice. It is only by virtue of the act of 1807 that our clerks are authorized to issue process. After suing out the original writ, at common law, the next step was a summons to the defendant to appear ; and, if he did not

appear, then an attachment against his goods. After the attachment, a *capias* might issue, but only in actions of trespass, &c.—Bla. Com. 279, 281, and authorities there cited. An attachment, then, is not (as the court considered it) a summary proceeding in derogation of the common law : on the contrary, it is a process well known at common law, and immemorially used, and has existed here since the first organization of the territorial courts. If it had ever been extraordinary, surely an uninterrupted use of it for fifty years would make it ordinary. Nor is it, in any proper sense of the word, summary : on the contrary, it is more complex and less expeditious than a suit commenced by summons. No statute, in express terms, gives the clerk of the city court power to issue a *capias ;* yet it is conceded that he has the power. Why has he not, under the same statutes, equal power to issue attachments ?

It is further submitted, that the decision is erroneous, in holding that the act of the clerk, in issuing an attachment, is judicial, and not ministerial. It is difficult, in some cases, to distinguish between judicial and ministerial acts ; and most ministerial acts require the exercise of some judgment and discretion on the part of the officer. At common law, where a judgment by default was taken, with a writ of inquiry, the sheriff presided at the execution of the writ ; and many of the most eloquent speeches of Erskine, Curran, and others, in cases of slander, *crim. con.* &c., were made before a sheriff and jury. So, too, in executing writs of *ad quod damnum.* Yet in all these cases, the sheriff acts ministerially, and may even act by deputy.—2 Johns. 63 ; Watson on Sheriffs, 221–225. In taking and approving an administration bond, a judge of probate acts ministerially.—3 Ala. 88, 92. In taking and approving an appeal bond, or a writ-of-error bond, a clerk acts ministerially.—9 Ala. 434 ; 17 Ala. 478 ; 9 Sm. & Mar. 641. Registers and receivers of the land-offices, in receiving evidence and deciding on pre-emption claims, act ministerially. 9 Missouri, 187. In issuing a summons of garnishment on a judgment, or a judicial attachment, a clerk acts ministerially. 7 Ala. 160 ; 22 Ala. 496, 499. A judicial officer is not liable for an injury resulting from a judicial act.—5 Johns. 282, 295; 9 Johns. 395 ; 26 Ala. 527 ; 1 Denio, 595 ; 4 Dev. & Bat.

351. But it cannot be doubted, that a clerk would be liable in damages for taking an insufficient bond, or for issuing an attachment without affidavit and bond ; and therefore he cannot act judicially. In taking and certifying acknowledgment on proof of a deed, a clerk acts ministerially ; and the act may, on this ground alone, be performed by a deputy.— 7 Ala. 138 ; 11 Ala. 9. If, then, the clerk acts ministerially in issuing an attachment, the whole ground of the decision in Stevenson v. O'Hara falls to the ground.

WALKER, J.—An original attachment was issued by the clerk of the city court of Mobile, against non-resident defendants, and was levied only by service of garnishment process on the appellants. Judgment was rendered against the defendants in attachment, and against the defendants in garnishment. The garnishees seek, by this appeal, to reverse the judgment against them. This court decided in Stevenson v. O'Hara, 27 Ala. 362, that an original attachment, issued by the clerk of the city court of Mobile, was void ; and that a judgment, predicated on such attachment, was also void. That decision has been at the present term re-affirmed, in the case of Matthews, Finley &. Co v. Sands, and must now be regarded as the law. It follows that the attachment in this case, and the judgment in the attachment suit, must be held to be void for want of jurisdiction, as to the defendants in the attachment.

The garnishee cannot avail himself of any mere irregularities in the attachment, or in the judgment against the defendant in attachment.—Parmer v. Ballard, 3 St. 326 ; Lowry v. Clements, 9 Ala. 424 ; Tubb v. Madding, Minor, 129 ; Stebbins v. Fitch, 1 Stew. 180. But it is undoubtedly the law, well settled in this State by repeated adjudications, upon unassailable principles, that there can be no valid judgment against the garnishee, where there is no judgment against the defendant in attachment. Unless the court has jurisdiction over the claim of the plaintiff against the defendant in attachment, and renders a valid judgment against the latter, he would not be bound by the judgment of the court appropriating his debt on the garnishee to the payment of the claim asserted by the plaintiff against him.—Stebbins v. Fitch,

1 Stew. 180 ; Leigh v. Smith, 5 Ala. 584 ; Blair v. Rhodes, *ib.* 650 ; Gaines v. Beirne & McMahan, 3 Ala. 114 ; Matthews, Finley & Co. v. Sands, at the present term. The judgment against the defendant in attachment was a nullity, because the court had no jurisdiction as to him; and therefore the judgment against the garnishee is irregular, and without the sanction of law.

The judgment of the city court must be reversed, and judgment here rendered discharging the garnishee, and imposing the costs of this appeal, and of the garnishment proceeding in the court below, on the appellee.